## Eichberg v. Board of Education Central City.

(Decided September 30, 1915.)

### Appeal from Muhlenberg Circuit Court.

Bills and Notes—Defense That May Be Made Against Purchaser of Negotiable Paper.—Where the purchaser, for value, of negotiable paper, before maturity, has actual notice of a contract executed in connection with the paper that gave the maker of the paper one year in which to test the sufficiency of the apparatus for which the note was executed, he is not a holder in due course under the negotiable instrument law, and the maker of the paper can assert any defense against the note in the hands of the purchaser that he could have made against it in a suit by the payee.

HOWARD & GRAY for appellant.

WALKER WILKINS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL.—Affirming.

In November, 1909, the Peck-Hammond Co., of Cincinnati, Ohio, entered into a contract in writing with the Board of Education of Central City to install in the school building a heating plant for the agreed price of $1,985. $985 was stipulated to be and was paid during the progress of the work, and for the remainder of the consideration two notes of $500 each were to be executed upon the completion and acceptance of plant. One of these notes was to be payable in one year and the other in two years, with interest from date.

It was further stipulated in the contract that the company "guaranteed that, with proper attention, the

plant will have capacity to and will heat all rooms in which radiators are placed, to a temperature of 70 degrees Fahrenheit in the coldest winter weather where installed, provided all outside doors and windows are properly fitted and kept closed.

"Settlement having been made promptly as per terms of this contract, you are to have twelve months from date of completion of this contract to test this apparatus, but you are to notify us at once in writing before that time in case of its failure to heat said building and allow us a reasonable time to remedy any defects."

It appears that on April 2, 1910, E. E. Gregory, for the Board of Education, wrote to the Peck-Hammond Co. the following letter: "Your Mr. Bosley, who has just finished up your contract for the school board here, with the exceptions of bronzing and placing ceiling and floor plates, in a most satisfactory manner, is in to get notes in compliance with your letter and our contract, but we will not be able to get to this matter before Monday or Tuesday of next week. As far as we can tell during this sort of weather, the plant is exactly right. I am giving Mr. Bosley this letter to clear him with you and to promise you that we will get the two notes to you as soon as possible."

A few days after this letter was written the Board of Education, in compliance with the contract, sent to the Peck-Hammond Co. the two five hundred dollar notes, each dated April 1, 1910, and due in one and two years, and on April 15, 1910, these two notes were sold and assigned by the Peck-Hammond Co. to the appellant Eichberg, who was at that time a stockholder in and the secretary of the Peck-Hammond Company.

When the five hundred dollar note due in April, 1911, matured it was paid; but the Board of Education refused to pay the other five-hundred dollar note, due in April, 1912, because, as it claimed, the heating plant did not give satisfaction or fulfill the conditions in the contract, and thereupon this suit was brought by Eichberg to recover the amount of the note. There was a trial before a jury and a verdict in favor of the Board of Education, and Eichberg appeals.

In April, 1910, when Gregory wrote the letter before quoted in which he said: "As far as we can tell during this sort of weather, the plant is exactly right," it had not been subjected to any cold weather tests, but in the winter

of 1910-1911 when the weather became cold, the plant, as the weight of the evidence tends to show, did not heat the building as the contract stipulated it should. When this condition was discovered, the Board of Education, in the fall of 1910, and before April, 1911, notified in writing the Peck-Hammond Co. of the failure of the plant to come up to the requirements of the contract, and the company sent some of its men who tried to remedy the defects and place the plant in such condition as that it would fulfill the contract, but it seems they did not succeed in their efforts.

There is conflict in the evidence as to whether the Board of Education notified the company in writing before April, 1911, of the failure of the plant to heat the building. Witnesses for the Board testify that it did notify the company in writing, while the evidence for the company shows that it was not notified in writing. But on this disputed issue of fact the jury found that notice in writing had been given.

Under the evidence counsel for Eichberg contend that the jury should have been directed to return a verdict in his favor upon the ground that he was a purchaser of the note in good faith, before its maturity, and without notice of any infirmity or defect in the title. Section 56 of the Negotiable Instrument Law, which is now section 3720b of the Kentucky Statutes, provides that "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Under this statute negotiable paper in the hands of a purchaser, although he may have procured it for value and before maturity, is subject to all the defenses the maker has against the payee, if the purchaser has actual knowledge of infirmity or defect in the paper, or knowledge of such facts that his action in taking the instrument amounts to bad faith.

Therefore, the only substantial question for decision in this case is, did Eichberg take this paper with actual knowledge of any infirmity or defect, or knowledge of such facts as would put him on notice that there was a defect in the title?

When Eichberg purchased this paper he had actual notice, as he testifies, of the condition in the contract which guaranteed the capacity of the apparatus and al-

lowed the Board of Education twelve months to test its sufficiency, and this being so, he took the paper with full notice of the fact that the Board of Education might resist the payment of the note if within the year the plant did not fulfill the conditions of the contract under which it was purchased, and the Board within the year notified the company in writing of this failure. Having actual notice of the contract and its conditions, Eichberg occupies precisely the same attitude as would the Peck-Hammond Co. if suit had been brought by it; and if suit had been brought by it on the note we think it cannot be questioned that the Board of Education could have defended the suit upon the ground that the company had not complied with the terms of the contract.

It is said, however, that Eichberg purchased the paper on the faith of the letter written by the Board of Education to the company on April 2, 1910, which letter, according to the construction placed on it by counsel for Eichberg, advised the company that the plant was satisfactory, and hence the Board of Education was estopped to resist the payment of the note on the ground that the plant did not comply with terms of the contract.

We do not think, however, that this letter is susceptible of the construction sought to be put on it. The letter, which was written immediately after the installation of the plant, merely stated that so far as the Board of Education could then determine, the plant was satisfactory, and, plainly, this did not abrogate the condition in the contract guaranteeing satisfaction for one year and giving the Board of Education the right at any time within the year to test and determine the sufficiency of the plant. It might have been entirely satisfactory so far as the Board of Education could discover when the letter was written and yet it might have proven very unsatisfactory and insufficient within the year during which the contract gave the Board the right to test its sufficiency.

Nor do we think the fact that the Board of Education paid the note that fell due in 1911 without protest affected its right to resist the payment of the other note. Eichberg purchased both of these notes within a few days after they were executed, and his status was fixed at the time of his purchase. If, by virtue of his purchase, he was at that time, within the meaning of the Negotiable Instrument Law, a holder in due course, subsequent events could

not operate to change his status. His rights are to be determined by the conditions existing at the time of his purchase. If the conditions then existing authorized the Board of Education to resist the payment of the notes, the Board of Education did not do anything subsequent to that time that took from it this right, and therefore we repeat that Eichberg occupied the same attitude as would the Peck-Hammond Co. if this suit had been brought by it.

Looking at the matter from this standpoint there was sufficient evidence to authorize the jury in finding a verdict for the Board of Education on the ground that it was damaged to the extent of the amount of the note by the failure of the plant to fulfill the conditions of the contract.

There are some other not material issues raised in the case, but as the argument of counsel for appellant is addressed to the proposition that under the facts the jury should have been directed to return a verdict in favor of Eichberg, we do not think it necessary to extend this opinion in discussing other matters that do not seem to us to affect the substantial rights of the parties.

The judgment is affirmed.